[Crim. No. 9375.    Second Dist., Div. Two.    Feb. 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ANNIE RUTH JONES, Defendant and Appellant.

Broady, Scarlett & Broady and Earl C. Broady for Defendant and Appellant.

Thomas C. Lynch and Stanley Mosk, Attorneys General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—On August 1, 1963, appellant was found guilty, in a nonjury trial, of having violated Penal Code, section 192: involuntary manslaughter.

On the evening of February 20, 1963, appellant, the deceased

and two friends, Barbara Hill and John Williams, were drinking and dancing at appellant's home. The two women and decedent had been drinking all day.

During the course of the evening, decedent who was appellant's boyfriend, stated that he was ready to go. Appellant told decedent that he wasn't going any place, and the party resumed. The decedent then pulled a closed knife from his pocket and started to hand it to appellant. Williams told decedent to put the knife back into his pocket, which decedent did. About 10 minutes later decedent again stated that he was going home and this time appellant told him to go. A few moments later, however, he returned flipping his knife with the blade exposed.

At this point appellant stated, "I thought you was going home, . . . [W]ell, you know, I hate you, . . . go on home."

Decedent said, "No." He then handed appellant the knife and said, "Well, if you hate me, go on and kill me." Miss Hill testified that she did not see what happened next, but Williams testified that on this occasion appellant had the knife in her left hand and fell upon decedent as if she were hugging him.

As appellant fell against decedent, Williams saw the knife in her hand and reached to grasp her arm and in the process took the knife from her, cut his hand, closed the knife and threw it on the floor. Williams' hand was bleeding. Appellant observing the bleeding hand went into the kitchen to get a bandage. Decedent who had been standing against the door frame during this time, fell to the floor after a few minutes. This was the first time that Hill or Williams realized that something was amiss.

When appellant came back into the room to bandage Williams' hand, Miss Hill told her that decedent had been cut. Appellant shouted, "I didn't mean to do it" and knelt down and cradled decedent's head in her lap stating "Don't do it. Don't do it. I didn't mean to."

When the police arrived appellant was waiting in front of the house. When asked by one of the officers what had happened, she replied, "I cut him, and I want to talk to him." After further investigation the officers arrested appellant. On the way to the police station she told the officers that she and deceased had been drinking, that they had argued and that she had cut him. At this time appellant did not know that the victim had died.

At the police station appellant was intermittently interrogated by homicide detectives who testified that the delays were caused by appellant's incoherent state, apparently caused by her intoxication. Eventually appellant signed a statement which set forth that appellant remembered decedent handing her the knife, that he had said ''go ahead and kill me,'' and that Miss Hill had said decedent was cut.

██ There is no showing in the record that appellant was advised of her right to have counsel at the time of the interrogation or of her right to remain absolutely silent.

Appellant raises three contentions on this appeal; none are meritorious. However, we are of the opinion that the Supreme Court's recent decision in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], requires a reversal, (*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 1765, 12 L.Ed.2d 977].)

██ Whether the appellant's cause was prejudiced or not by the admission of her oral confession and signed statements to the police after her arrest in light of the testimony of the eyewitnesses and in light of the statements made to the police before her arrest, is not open to analysis. *Dorado, supra,* held that the courts cannot inquire into the prejudicial nature of a confession obtained in violation of appellant's constitutional rights, since it is extremely difficult to determine what part it played in securing the conviction.

The judgment is reversed.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 14, 1965. Mosk, J., did not participate therein. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.